UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

|  |  |  |
|---|---|---|
| JOHN GRABLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:21-CV-00459-NCC |
| | ) | |
| KILOLO KIJAKAZI,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of John Grable ("Plaintiff") for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq*.[2] Plaintiff has filed a brief in support of the Complaint (Doc. 29) and Defendant has filed a brief in support of the Answer (Doc. 34).  The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 9).

### I.  PROCEDURAL HISTORY

On May 20, 2019, Plaintiff protectively filed his application for SSI (Tr. 12, 498-507, 510-17, 526).  Plaintiff was initially denied on December 20, 2019, and he filed a Request for

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi shall be substituted for former Commissioner Andrew Saul as the defendant in this suit.  No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Plaintiff amended his alleged onset date of disability such that he was not entitled to Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq*., and, accordingly, withdrew his request for a hearing on his application for DIB (Tr. 12).

Hearing before an Administrative Law Judge ("ALJ") (Tr. 430-59).  After a hearing, by decision dated September 22, 2020, the ALJ found Plaintiff not disabled prior to July 19, 2020, but disabled beginning on that date (Tr. 8-28).  On March 23, 2021, the Appeals Council denied Plaintiff's request for review (Tr. 1-7).  As such, the ALJ's decision stands as the final decision of the Commissioner.

## II.  DECISION OF THE ALJ

The ALJ determined that Plaintiff has not engaged in substantial gainful activity ("SGA") since the amended alleged disability onset date of May 20, 2019 (Tr. 14).  The ALJ found that, since May 20, 2019, Plaintiff has had the severe impairments of cervical and thoracic degenerative disc disease with stenosis, lumbar post-laminectomy syndrome status post previous lumbar decompression fusion and revision, bilateral below knee neuropathy, ischemic heart disease, major depressive disorder also diagnosed as bipolar affective disorder, and generalized anxiety disorder, but that no impairment or combination of impairments meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 15-17).  After careful consideration of the entire record, the ALJ determined that, since May 20, 2019, Plaintiff has had the residual functional capacity ("RFC") to perform a range of sedentary work with the following limitations (Tr. 17).  Plaintiff can climb ramps and stairs occasionally (*id.*).  He can never climb ladders, ropes, or scaffolds (*id.*).  He can balance frequently (*id.*).  He can stoop, kneel, crouch, and crawl occasionally (*id.*).  He can never work at unprotected heights, and can never be exposed to concentrated levels of vibration (*id.*).  He is able to understand, remember and carry out instructions to perform simple, routine and repetitive tasks (*id.*).  He is able to use judgment to make simple work-related decisions (*id.*).  He can occasionally interact with supervisors, coworkers, and the public (*id.*).  He is able to tolerate only

occasional changes in the routine work setting (*id.*).  He should never operate hazardous machinery, and would need to use a cane while ambulating in the work place (*id.*).  The ALJ found Plaintiff has no past relevant work (Tr. 22).  The ALJ determined that, applying the age categories non-mechanically, and considering the additional adversities in the case, on July 19, 2020, Plaintiff's age category changed to an individual closely approaching advanced age (*id.*).  The ALJ found that, prior to July 19, 2020, there were jobs that existed in significant numbers in the national economy Plaintiff could perform, including assembler and product checker (Tr. 22-23).  The ALJ found that, beginning on July 19, 2020, there were no jobs that existed in significant numbers in the national economy Plaintiff could perform (Tr. 23).  Thus, the ALJ concluded that Plaintiff was not disabled prior to July 19, 2020, but became disabled on that date and continued to be disabled through the date of the decision (*id.*).

### III.  LEGAL STANDARD

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled.  20 C.F.R. §§ 416.920, 404.1529.  "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled."  *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)).  In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits.  20 C.F.R. §§ 416.920(b), 404.1520(b).  Second, the claimant must have a severe impairment.  20 C.F.R. §§ 416.920(c), 404.1520(c).  The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities. . . ."  *Id*.  "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments

3

would have no more than a minimal impact on [his or] her ability to work.'"  *Page v. Astrue*, 484

F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir.

2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or

equals one of the impairments listed in the Regulations.  20 C.F.R. §§ 416.920(d), 404.1520(d).

If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is

per se disabled without consideration of the claimant's age, education, or work history.  *Id*.

Fourth, the impairment must prevent the claimant from doing past relevant work.  20

C.F.R. §§ 416.920(f), 404.1520(f).  The burden rests with the claimant at this fourth step to

establish his or her RFC.  *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step

four of this analysis, the claimant has the burden of showing that she is disabled.").  The ALJ

will review a claimant's RFC and the physical and mental demands of the work the claimant has

done in the past.  20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work.  20

C.F.R. §§ 416.920(g), 404.1520(g).  At this fifth step of the sequential analysis, the

Commissioner has the burden of production to show evidence of other jobs in the national

economy that can be performed by a person with the claimant's RFC.  *Steed*, 524 F.3d at 874

n.3.  If the claimant meets these standards, the ALJ will find the claimant to be disabled.  "The

ultimate burden of persuasion to prove disability, however, remains with the claimant."  *Young v.*

*Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000); *see also Harris v. Barnhart*, 356 F.3d 926, 931

n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377

F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate

RFC remains on the claimant, even when the burden of production shifts to the Commissioner at

4

step five.").  Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence.  *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984).  "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion."  *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo.  *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).  Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion.  *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)).  Weighing the evidence is a function of the ALJ, who is the fact-finder.  *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004).  Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently.  *Krogmeier*, 294 F.3d at 1022.

## IV.  DISCUSSION

In his appeal of the Commissioner's decision, Plaintiff raises two issues.  First, Plaintiff argues that the RFC is not supported by substantial evidence (Doc. 29 at 2).  As part of that argument, Plaintiff asserts that the ALJ did not sufficiently explain the supportability and consistency factors in evaluating the opinion of the state agency medical consultant Dr. Renu Debroy, M.D. (*id.* at 5-6).  Second, Plaintiff argues that the ALJ's decision lacks a proper pain evaluation (*id.* at 6).  Because the Court agrees that the ALJ erred in evaluating Dr. Debroy's opinion, the Court will decide that issue alone.

Plaintiff argues that the ALJ did not sufficiently explain the supportability and consistency factors in evaluating the opinion of the state agency medical consultant Dr. Renu Debroy, M.D. (Doc. 29 at 5-6).  The Commissioner responds that the ALJ addressed both factors (Doc. 34 at 10-11).  For claims like Plaintiff's, filed after March 27, 2017, an ALJ evaluates medical opinions pursuant to 20 C.F.R. § 404.1520c.  These new rules provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [Plaintiff's] medical sources."  20 C.F.R. § 404.1520c(a).  Rather, an ALJ is to evaluate the persuasiveness of any opinion or prior administrative medical finding by considering the: (1) supportability of the opinion with relevant objective medical evidence and supporting explanations; (2) consistency with the evidence from other medical sources and nonmedical sources in the claim; (3) relationship with the plaintiff, including length, purpose, and extent of treatment relationship, whether it is an examining source, and frequency of examination; (4) specialization; and (5) other relevant factors.  20 C.F.R. § 404.1520c(c).

In evaluating the persuasiveness of a medical opinion, the factors of supportability and consistency are the most important for an ALJ to consider, and the ALJ must "explain how [she] considered the supportability and consistency factors … in [the] determination or decision."  20 C.F.R. § 404.1520c(b)(2).  An ALJ's failure to address either the consistency or supportability factor in assessing the persuasiveness of a medical opinion requires reversal.  *Bonnett v. Kijakazi*, 859 Fed. Appx. 19, 20 (8th Cir. 2021) (unpublished) (per curium) (citing *Lucus v. Saul*, 960 F.3d 1066, 1069-70 (8th Cir. 2020) (remanding where ALJ discredited physician's opinion without discussing factors contemplated in Regulation, as failure to comply with opinion-

6

evaluation Regulation was legal error)).  ALJs need not explain in their decision how they considered the other factors.  20 C.F.R. § 404.1520c(b)(2).

An "ALJ's sprinkling of the words 'support' and 'consistent' in her cursory treatment of [medical] opinions is insufficient to satisfy the Regulation's requirement that the ALJ 'explain' how she considered these factors in determining the persuasiveness of a medical opinion." *Martini v. Kijakazi*, No. 4:20 CV 1711 CDP, 2022 WL 705528, at *4 (E.D. Mo. Mar. 9, 2022). "[W]hile an ALJ's explanation need not be exhaustive, boilerplate or 'blanket statement[s]' will not do." *Lucus*, 960 F.3d at 1069 (quoting *Walker v. Comm'r, Soc. Sec. Admin.*, 911 F.3d 550, 554 (8th Cir. 2018)). "No matter the adequacy of the ALJ's general summary of the evidence of record, she nevertheless [must] abide by the Regulation's mandate to 'explain' the supportability [and consistency] of [a medical] opinion in view of such evidence." *Martini*, 2022 WL 705528 at *5; *see also Pipkins v. Kijakazi*, No. 1:20 CV 161 CDP, 2022 WL 218898 (E.D. Mo. Jan. 25, 2022) (finding that the ALJ's failure to "explain" and "articulate" the supportability and consistency of medical opinion evidence was reversible error even when the ALJ elsewhere adequately summarized the evidence of record, and it supported the RFC determination).  The Regulation requires "more than a conclusory statement as to the supportability and consistency factors so a reviewing court can make a meaningful assessment of a challenge to an ALJ's evaluation of the persuasiveness of various medical opinions." *Hirner v. Saul*, No. 2:21-CV-38 SRW, 2022 WL 3153720, at *9 (E.D. Mo. Aug. 8, 2022).

Here, the entirety of the ALJ's discussion of the two factors of supportability and consistency with regard to Dr. Debroy's opinion was: "[h]is opinions are supported by the narrative explaining the evidence considered, and are generally consistent with the medical evidence of record" and "greater restriction (than opined by Dr. Debroy) is supported and

consistent with the medical evidence with regard to unprotected heights and climbing ladders, ropes, and scaffolds, due to intermittent unsteadiness and falls" (Tr. 21).  Even if the ALJ's citation to Dr. Debroy's narrative could be considered sufficient as to the supportability factor, the statement that Dr. Debroy's opinion is "generally consistent with the medical evidence of record" is insufficient to satisfy the Regulation's directive of explanation regarding consistency. *See Martini*, 2022 WL 705528 at *5 ("finding ALJ's statement that opinion was "consistent with the record as a whole" insufficient); *Post v. Kijakazi*, 2021 WL 4355349, at *7 (E.D. Mo. Sept. 24, 2021) (finding ALJ's statement that opinion was "consistent with the claimant medical record, as more fully discussed above" insufficient).  The Court finds that the ALJ erred in analyzing the persuasiveness of Dr. Debroy's opinion.

Because remand is required for revaluation of the opinion evidence, the Court will not rule on Plaintiff's remaining arguments.  *See, e.g., Hirner*, 2022 WL 3153720, at *10.  However, some comment is warranted on Plaintiff's arguments regarding treatment and the ALJ's pain evaluation (Doc. 29 at 8-11).  The ALJ discredited Plaintiff's complaints in part due to Plaintiff's "conservative" treatment and his failure to explain why he did not avail himself of pain-relieving injections (Tr. 19-20).

As noted by the ALJ, Plaintiff has experienced back problems since a remote fall while tree trimming (Tr. 18).  According to Plaintiff, it was in 2005-2006 and he fell 50 feet straight down (Tr. 67, 404, 814, 877, 1130, 1204).  He had an L3 compression fracture and underwent a L1-5 posterior spinal fusion (Tr. 596, 710).  According to Plaintiff, he was paralyzed for 1.5-2.5 years and told he would not walk again (Tr. 404, 814, 1130).  Plaintiff eventually developed intractable lumbago sciatica and an MRI showed a lumbar disk herniation, L5-S1 on the left (Tr. 596).  In 2016, he had another back surgery—a revision lumbar laminectomy and diskectomy,

L5-S1 on the left—as noted by the ALJ (Tr. 18, 596).  In 2018, an MRI showed multilevel degenerative disc and joint disease, with severe foraminal stenosis and moderate canal stenosis in the lumbar area, as noted by the ALJ (Tr. 18, 1331).  In November of 2018, Plaintiff had yet another surgery—an elective C4-5-6-7 anterior cervical discectomy and fusion (ACDF)—as noted by the ALJ (Tr. 18, 638, 702, 710).

Plaintiff limps and needs to use a cane for ambulation (Tr. 17, 406, 1139).  During the relevant adjudicated period (May 20, 2019 through July 18, 2020), Plaintiff was taking baclofen, Percocet, and ibuprofen for his back, and Gabapentin for nerve pain down his legs (Tr. 1157, 1175).  He was prescribed 10/325 mg of Oxycodone-acetaminophen (Percocet) three times daily (Tr. 1160, 1178).  Plaintiff consistently reported pain related to his spinal and nerve issues.  As of June 17, 2020, he reported that he had had severe leg pain for the past five to six months that caused his legs to give out (Tr. 1145).

As noted by the ALJ, in March of 2020, an MRI showed lumbar degenerative disc and joint diseases, with severe left foraminal stenosis at L5-S1, central canal stenosis at L2-L3, and postsurgical changes at L3-L4 and L4-L5 (Tr. 19, 1277-78, 1329, 1335).  Plaintiff was referred for a neurosurgical consultation (Tr. 1145).  Dr. Mark Rivkin found that no further surgery was indicated and that Plaintiff's pain may be a consequence of a remote nerve injury (*id.*).  Plaintiff was referred for a pain management consultation (Tr. 1335).  Dr. Chad Shelton found Plaintiff's symptoms were consistent with treatable pathology in his MRI (Tr. 1336).  He found that Plaintiff's left-sided radicular symptoms, which Plaintiff stated has been present for quite some time, were consistent with L5 radiculopathy (*id.*).  He found that Plaintiff's symptoms were also consistent with a central canal stenosis at the L2-L3 level and noted that Plaintiff was mostly complaining of those symptoms (*id.*).

Complicating treatment of Plaintiff's continued pain related to his spinal and nerve issues were heart issues.  In May of 2020, myocardial imaging showed a moderate-sized ischemia and Plaintiff underwent a heart catheterization procedure resulting in a diagnosis of moderate or borderline-severe mid LAD stenosis and a stenting of the mid LAD (Tr. 1190, 1285-86, 1292, 1308).  Plaintiff's problem list included coronary artery disease involving native coronary artery of native heart without angina pectoris (Tr. 1198).

Regarding treatment for pain related to Plaintiff's spinal and nerve issues, Dr. Shelton noted as follows.  His first approach would be bilateral to transforaminal injections (Tr. 1336).  But, unfortunately, Plaintiff would probably not be getting permission to stop his blood thinners because of his recent stent (*id.*).  And, unfortunately, an intralaminar approach with Plaintiff's postsurgical changes would probably be limited (*id.*).  There was possibly some issue with foraminal stenosis with regard to Plaintiff's foot drop and foraminotomics could be considered (*id.*).  An L5 transforaminal injection could be considered if that becomes the most significant painful area (*id.*).  Plaintiff was going to follow up with Dr. Curylo, Plaintiff's surgeon, to get another opinion, and Dr. Shelton thought that was reasonable (*id.*).  But, Plaintiff may not be able to do much until he is able to stop his blood thinners (*id.*).  Plaintiff planned to follow up then (*id.*).

As of July 24, 2022, Plaintiff reported to his psychiatrist that he needed another back surgery but it was delayed due to his heart issues, he had to wait six months to a year, and he was working on pain management but somewhat reluctant to have injections (Tr. 1231).  Plaintiff testified that cortisone shots and possibly having another back surgery were recommended, but that he could not pursue those options due to being on blood thinners (Tr. 347, 357).  In

September and October of 2020, Plaintiff's providers noted that he needed another back surgery (Tr. 89, 98, 103, 106).

The Court questions whether a history of multiple spinal surgeries, ambulation with a cane, recent consultations with a neurosurgeon and a pain management specialist, and a regimen of ibuprofen, baclofen, Gabapentin, and 10/325 mg of Oxycodone-acetaminophen (Percocet) three times daily for pain consistent with Plaintiff's spinal and nerve issues constitutes "conservative" treatment. *See, e.g., Clarambeau v. Saul*, No. 4:19-CV-04170-VLD, 2020 WL 3097771, at *19 (D.S.D. June 11, 2020) (questioning whether the plaintiff's treatment history, which included a previous low back surgery and nerve ablation surgery could be considered a conservative course of care). Furthermore, while there is a note that Plaintiff was "somewhat reluctant to have injections," the medical record indicates that Plaintiff was unable to pursue more aggressive treatment due to his heart issues, including the necessity that he be on blood thinners (Tr. 89, 98, 103, 106, 347, 1336, 1231). On remand, the ALJ is advised to take into account Plaintiff's course of treatment and complicating heart issues.

## V.  CONCLUSION

For the foregoing reasons, the Court finds that the ALJ's decision is not supported by substantial evidence because the ALJ did not properly evaluate the opinion evidence within the record.

Accordingly,

**IT IS HEREBY ORDERED** that this action is **REVERSED AND REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration in accordance with this Memorandum and Order.

11

A separate judgment shall be entered incorporating this Memorandum and Order.

Dated this 28th day of September, 2022.


   /s/ Noelle C. Collins
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE